TODD BLANCHE
Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar Number 8264
AFROZA YEASMIN
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Afroza.Yeasmin@usdoj.gov
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL HENNIGH,<br><br>Defendant. | Case No.: 2:25-cr-00248-GMN-NJK<br><br>**Government's Sentencing Memorandum** |

CERTIFICATION: The undersigned counsel certifies that this memorandum is timely filed.

## I. Introduction

Defendant Daniel Hennigh raped and sexually abused a toddler in his care inside of his home. Later that day, he attempted to meet with who he believed was a "bad dad[1]" to abuse two children he believed to be in the "bad dad's" care. During that conversation

[1] A "bad dad" is a colloquial term used by offenders of child exploitation to indicate that they are parents who abuse their children and other family members.

with the "bad dad," to prove that he was serious about the abuse being discussed, Hennigh, unprompted, shared the video he created of the abuse he committed against the toddler in his care. Consistent with probation's recommendation, Hennigh's actions in this case warrant the jointly recommended sentence of 420-months imprisonment, and a lifetime term of supervised release with all conditions recommended in the revised Presentence Investigation Report (PSR) imposed, dated January 28, 2026.

## II. Factual Background[2]

On October 6, 2025, Hennigh plead guilty to a four-count criminal indictment charging him with the sexual exploitation of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), coercion and enticement in violation of 18 U.S.C. §§ 2422(b), the distribution of child pornography in violation of §§ 2252A(a)(2) and (b)(1), and the possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

Sentencing is currently scheduled for October 13, 2026.

## III. Points and Authorities

### A. The Applicable Sentencing Guidelines

The United States Probation Office (USPO) largely correctly calculated the sentencing guidelines in the PSR. However, there are three differences that the government would like to address, which are mostly academic in nature. The first is as to grouping of Counts 1, 3 and 4, the second is regarding the absence of a specific offense characteristic for Count 2, and the third is the five-level enhancement pursuant to chapter 4 of the Sentencing Guidelines. Consistent with the plea agreement, the parties jointly

---

[2] The factual basis is contained in the Plea Agreement [ECF No. 28 at pgs. 10-12] and supplemented by the PSR.

recommend that the Court apply the guideline calculations as enumerated in the plea agreement.

United States Sentencing Guideline ("USSG") section 3D1.1 directs closely related counts to be grouped as one group pursuant to the rules enumerated in USSG § 3D1.2. USSG § 3D1.2(a) states that counts involving the same victims and same act or transaction be grouped together. While USSG § 3D1.2(d) addresses offenses where there is aggregate harm, that section specifically excludes USSG § 2G2.1 (sexual exploitation of a minor) offenses from being grouped with other counts of child pornography offenses.

Specifically, USSG § 3D1.2(d) does not group a count of sexual exploitation of children with a count of possession of child pornography. Application note 3 of USSG § 3D1.2 states that "[u]nder subsection (a), counts are to be grouped together when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim."

In the instant matter, the only CSAM associated with Hennigh at this time is the CSAM video he produced of Victim-1 (Count one). On the same day, this CSAM video was then distributed by Hennigh (Count three) and provides the basis for the possession offense as charged in Court four. In a very rare occurrence, the instant matter is in fact dealing with the same victim, and one on-going criminal transaction occurring over the course of one day, however, the injury caused by each of Hennigh's actions is completely different. Production of this video memorialized one instance of abuse Hennigh inflicted upon the toddler, it was not enough for it to live in his head, he needed it recorded to review in perpetuity. He then exponentially exacerbated the harm by distributing it to who he believed was a "bad dad" to bolster his representations of being an individual who was

serious about abusing children. Each of these harms are unique, and compound on the harm they present individually.

To apply USSG § 3D1.2(a), which deals with a singular injury to a singular victim, instead of USSG § 3D1.2(d), which specifically takes into account the aggregate harm caused in these types of offenses, would inappropriately relieve the defendant of accountability for the totality of the harm he caused this toddler. Albeit, in this specific instance, the difference in the grouping proposed by the parties and in the PSR is mostly academic as the resulting total offense level only differs by one offense level and is still well over the highest offense level of 43, even after acceptance.

The PSR fails to include the specific offense characteristic of a two-level enhancement pursuant to USSG 2G1.3(b)(1)(A) which deals with the relationship between Hennigh and the victim. To protect the identity of the victim the government is refraining from providing Hennigh's specific custodial relationship to the child in a public filing. However, the PSR repeatedly, beginning on page 6, accurately articulates their relationship, which Hennigh himself has confirmed and stated numerous times to Probation, and law enforcement before and after being arrested on the instant offense. As such, the two-level enhancement should be applied to Count 2, as agreed upon by the parties in the plea agreement.

Finally, the PSR includes a five-level Chapter 4 enhancement, which deals with the repeated sex abuse of a child. Pursuant to the plea agreement the government will not be proffering any evidence as to this enhancement. As such, the parties request that the Court apply the guidelines as enumerated and recommended by the parties in the Plea Agreement.

//

**B. Term of Imprisonment**

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). The Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution. 18 U.S.C. § 3553(a). Considering the relevant factors, the Court should impose a 420-month sentence.

Hennigh created child sexual abuse material of a toddler within his supervisory control. He explained his behavior by appealing to the sexual frustrations a man faces when he is sexually unfulfilled by a partner. Hennigh believes he lacked impulse control around the child because he was sexually unfulfilled by his partner and attributed sexual connotations to the ordinary behavior of a 3-year-old that he should be protecting. *See* PSR at pgs. 9-10.

Hennigh not only sexually exploited a child who *trusted* him. Further, he memorialized it and then distributed the same in an attempt to bolster his seriousness of abuse *other* children.

In 2012, the Sentencing Commission submitted its most recent evaluation of the child pornography guidelines in its Report to the Congress: Federal Child Pornography Offenses (*available at* http://www.ussc.gov/news/congressional-testimony-and-

reports/sex-offense-topics/report-congress-federal-child-pornography-offenses) (the "2012 Report"). The 2012 Report opens stating: "All child pornography offenses, including the simple possession of child pornography, are extremely serious because they both result in perpetual harm to victims and validate and normalize the sexual exploitation of children."[3]

At the beginning of its report, the Sentencing Commission emphasized the terrible impact of child pornography. It described what those in the criminal justice system have long known: child pornography has a highly destructive, life-long impact on victims. It devastates children and undermines all of society because the effects of this abuse extend to those who are close to the victim, including parents, partners, spouses, friends, and siblings, and because it destroys the fabric of a community when rape, violence, and exploitation of children are normalized and traded, collected, and used for sexual gratification.

In April 2020, the Sentencing Commission submitted an evaluation of the effect various lengths of sentences had on recidivism in its report "Length of Incarceration and Recidivism." *Available* at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf (the "2020 Recidivism Report"). The Commission analyzed the relationship between length of incarceration and recidivism by examining five study units through three models. *Id.* at 30. In its evaluation, "[t]he Commission consistently found that incarceration lengths of more than 120 months had a deterrent effect." *Id.* at 4. It found that offenders who served sentences longer than ten years were 30 to 45 percent less likely to recidivate eight years after release. *Id.* at 30. Offenders incarcerated between 60 and 120 months were approximately 17 percent less likely to recidivate during the same time period following

[3] *Id.* at vi.

release. *Id*. For incarceration lengths of 60 months or less, there was no statistically significant deterrent effect. *Id.* Based on this data, the 2020 Recidivism Report concluded that sentences of 60 months or more had a statistically significant effect on deterrence and recidivism. *Id.*

Hennigh's actions warrant a sentence of 420 months (35 years). The Ninth Circuit has upheld similar long sentences for defendants convicted of similar charges. In *United States v. Wilkinson*, 706 F. App'x 337, 341 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018), the Ninth Circuit upheld a 130-year sentence as substantively reasonable. The district court sentenced the defendant to the statutory maximum for each charged count and ran the sentences consecutively. *Id.* Other courts around the country have likewise imposed lengthy sentences against child pornography offenders with similar charges. *See United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (750-year sentence); *U.S. v. Hamilton*, 548 F. App'x. 728 (2d Cir. 2013) (150-year sentence); *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006) (140-year sentence); *United States v. Castillo*, 427 F. App'x. 748 (11th Cir. 2011) (130-year sentence); *U.S. v. Hodge*, 729 F.3d 717 (7th Cir. 2013) (115-year sentence); *U.S. v. Williams*, 561 F. App'x. 784 (11th Cir. 2013) (100-year sentence); *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) (100-year sentence); *U.S. v. Herrick*, 512 F. App'x. 534 (6th Cir. 2013) (95-year sentence); *United States v. Snyder*, 425 F. App'x. 64 (2d Cir. 2011) (75-year sentence); *U.S. v. Boroczk*, 705 F.3d 616 (7th Cir. 2013) (70-year sentence); *United States v. Miller*, 538 F. App'x. 501 (5th Cir. 2013) (70-year sentence).

Cases in this district show that judges in Nevada also recognize the extreme harm that these crimes inflict on their victims. In a recent case, Judge Dorsey sentenced Antonio Masters (a 28-year-old man) to nearly 30 years imprisonment on a single count of sexual exploitation of a minor for a single victim. 2:17-CR-007-JAD-CWH. Judge Du sentenced

Danny Salzer (a 53-year-old man with end-stage stomach cancer) to 17.5 years imprisonment on three counts of sexual exploitation of a minor and a single count of possession of child pornography. 2:18-CR-189-MMD-EJY. In April 2026, Judge Gordan sentenced Daniel Lee Rhees to 220 months incarceration, in case number 2:23-cr-00017-APG-NJK, for conduct related to the sexual exploitation of children in his care. Most recently, in September 2026, this Court sentenced Adam Joseph Cardenas to 281 months of incarceration for similar conduct relating to the abuse of children in his care, in case number 2:24-cr-000254-GMN-DJA.

Nevada judges are doing exactly what other judges are doing across this country because they realize that production of child pornography is one of the most damaging harms that can be done to a child. It should also be noted that the examples provided above deal with criminal matters with top counts of the Sexual Exploitation of Children. An offense that either carries a statutory max of 30 years or 50 years, with a qualifying prior conviction. Therefore, many of the examples provided above are either statutory max, or close to it, sentences for their respective offenses. In the instant matter, the statutory max for the Sexual Exploitation of Children (count 1) is 30 years of imprisonment, however, the statutory max for the Coercion and Enticement (count 2) is lifetime incarceration. Consistent with probation, the parties' request for a 420-month sentence for Hennigh's conduct of sexually exploiting a child in his care, distributing and possessing the self-produced CSAM, and attempting to sexually abuse additional children is substantively reasonable and warranted. This sentence is similar to other sentences imposed in similar matters and holds Hennigh accountable for the totality of his actions.

A sentence of 420 months serves a strong deterrent purpose to Hennigh and other offenders of child exploitation while also giving Hennigh credit for his early acceptance of

responsibility. To give him any further variance would defy the goals of sentencing set forth in 18 U.S.C. § 3553. The parties' negotiated sentence in this case reflects careful consideration of the facts, the responsibility taken by Hennigh, and every possible benefit of § 3553 given to him. The 420-month sentence is the bare minimum to give adequate consideration to the need to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment. This sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and most importantly, to protect the public.

### C. Supervised Release

Consistent with Probation's recommendation, the government requests the imposition of a lifetime term of supervised release.[4]

The PROTECT Act of 2003, codified in relevant part in 18 U.S.C. § 3583(k), imposes a mandatory minimum term of five years of supervised release, and a maximum term of life, for offenses related to the trafficking of child pornography. The 2012 Report discussed the necessity, appropriateness, and the widely-applied imposition of lifetime supervision in child pornography matters as "effective supervision and treatment of offenders (as a condition of supervision) are important means of reducing recidivism and promoting public safety"[5] The 2012 Report referenced a study conducted by the Sentencing Commission that tracked the recidivism of qualifying child pornography offenders with non-production convictions. The 2021 Sentencing Commission Report to Congress (hereinafter "2021 Report") expanded on the 2012 Report providing more

---

[4] *See* PSR at pg. 28.

[5] U.S. Sent'g Comm'n, *Report to Congress: Federal Child Pornography Offenses*, ch. 10-11 (Dec. 2012)

updated statistics related to the recidivism rates of qualifying child pornography offenders who were released from incarceration or placed on supervision in 2015.[6] Further highlighting the high recidivism rates that continue to persist is the fact that, in the 2023 fiscal year, 12.7% of offenders convicted for trafficking child pornography, 25.6% of offenders convicted for possessing child pornography, and 12.5% of offenders convicted for receiving child pornography had a prior sexual abuse or child pornography conviction.[7]

To address recidivism, Probation imposes two categories of conditions on offenders of child pornography. The first addresses rehabilitation by requiring treatment and restricting behaviors that are associated with sexual deviance, while the second addresses deterrence through early detection of violations or indicia of the potential in a relapse of behavior. The aforementioned Reports not only highlight the rates of recidivism in child pornography offenders but also discuss the positive[8] impact that longer terms of supervision have on preventing new abuse or relapsing into old patterns.

In the instant matter, there is a heightened necessity to both prevent recidivism and detect as early as possible the indicia of relapse. Hennigh not only sexual assaulted a 3-year-old in his care, but he recorded it for sharing over the internet, to attempt to access additional children to sexually abuse. He has clearly demonstrated the lengths he is willing

---

[6] U.S. Sent'g Comm'n, *Report to Congress: Federal Child Pornography Offenses* (June 2021)

[7] SOURCE: United States Sentencing Commission, FY 2019 through FY 2023 Datafiles, USSCFY19-USSCFY23. https://www.ussc.gov/research/datafiles/commission-datafiles

[8] The 2012 Report states that "longer terms of supervision may deter some offenders from committing new offenses but also present other offenders with an increased opportunity to violate the conditions of supervision (footnote 43)." Early detection of relapsing behavior through violations of the conditions of supervised release further demonstrates the necessity of continued or longer terms of supervision.

to go to satisfy his deviant needs, provide the same to others over the internet, and seek additional abuse.

Hennigh's likelihood to re-offend and any further harm to the children will be reduced if he remains on supervision for the longest period possible, which in the instant matter is a term of life. A lengthy term of supervision will go far in keeping the community safe from Hennigh by providing offender management services and keeping him accountable. Aside from sex offender rehabilitation, which is undoubtedly warranted in this case considering Hennigh's admitted deviant sexual behavior, he would also benefit from the recommended special conditions enumerated in the PSR.

Conditions of supervised release may only be imposed if they are reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender. 18 U.S.C. §§ 3583(d)(1), 3553(a). However, conditions of supervised release need not relate to the defendant's underlying offense, so long as they relate to at least one of these goals. *United States v. Wise*, 391 F.3d 1027, 1031 (9th Cir. 2004). The Ninth Circuit has consistently held that as long as the district court makes a factual finding which establishes a nexus between the condition and one of the goals articulated in 18 U.S.C. § 3553(a)(2)(B)-(D), the district court is not abusing its discretion to impose such a condition. *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988); *see also United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009). Each of the conditions listed in the PSR are related to Hennigh's deterrence, protection of the public, or rehabilitation. Accordingly, the government asks that the special conditions be imposed as recommended by the probation office.

**IV. Conclusion**

Provided the severity of Hennigh's crimes, and the gravity of his actions as articulated in the facts of this case, a 420-month sentence is both appropriate and sufficient, but not greater than necessary, to meet the goals of sentencing.

Dated this the 6th day of October 2026.

Respectfully Submitted,

TODD BLANCE
United States Attorney General

*/s/ Afroza Yeasmin*
AFROZA YEASMIN
Assistant United States Attorney